**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0045n.06

**Nos. 10-4180, 10-4583, 11-3008**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 08, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., ALLIED-GATOR, INC., | ) ) ) | |
| Plaintiffs-Appellants / Cross-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| GENESIS EQUIPMENT & MANUFACTURING, INC., MARK D. RAMUN, GENESIS ATTACHMENTS, LLC, | ) ) ) ) | |
| Defendants-Appellees / Cross-Appellants. | | |

---

BEFORE: BOGGS and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

BARZILAY, Senior Judge. This appeal arises out of numerous motions filed following a jury trial on the misappropriation of trade secrets. Appellants and Cross-Appellees Allied Erecting & Dismantling Co. and Allied-Gator, Inc. (collectively, "Allied") appeal the district court's jury instructions on lost-profits damages, its vacatur of the jury award for unjust-enrichment damages, and its denial of their motion for a permanent injunction. Allied also argues that the court should remand for a new trial on the issue of punitive damages, prejudgment interest, and attorney's fees. Cross-Appellants and Appellees Genesis Equipment & Manufacturing, Inc. and Genesis Attachments, LLC (collectively, "Genesis") and Mark Ramun, for their part, argue that the district

---

[*]The Honorable Judith M. Barzilay, Senior Judge, United States Court of International Trade, sitting by designation.

court erred in not vacating the jury's finding of misappropriation and, alternatively, that the court should remand for a new trial. For the reasons below, we REVERSE the district court's vacatur of the jury award for unjust enrichment damages and AFFIRM on all other matters.

## I. Background

Founded in 1973 as a family-owned business, Allied specializes in industrial dismantling and scrap processing. A773, A776-A777, A785. As such, Allied developed the Allied MT, a series of multi-purpose demolition-machine attachments that allow the operator to switch more easily between instruments, including a "shear jaw set" (used to cut steel beams) and a concrete-crusher jaw set. A296-A315. Allied filed a patent application for the Allied MT with the World Intellectual Property Organization ("WIPO") in April 2001, A2576, and received patents from the United States Patent and Trademark Office in 2006, A2653, A2698.

From May 1992 to June 2001, Mark Ramun worked as a manager of various departments at Allied. A1246. While at Allied, Mark Ramun had a tense relationship with his father, Allied's president, John Ramun. A875-A877, A1392-A1394. The parties dispute whether he was fired or quit, but in 2001 Mark Ramun left Allied and in 2002 joined a competing company, A-Ward Attachments. A714, A739, A1394, A1469. When he left Allied, Mark Ramun retained approximately 15,000 pages of Allied's documents on DVDs and CDs, including information related to the Allied MT. A890, A1241-A1242.

Genesis also designs and manufactures industrial demolition and scrap-processing attachments. A716. In August 2003, the vice president of Genesis personally hired Mark Ramun for a sales position. A1864. Within one year, Mark Ramun was promoted to director of

2

development and demolition services. A1426. At trial, Allied produced evidence that Mark Ramun personally worked with Genesis engineers developing the Genesis LXP ("LXP"), a demolition attachment that can accommodate interchangeable jaw sets, like the Allied MT, A1324, A1335-A1339, A1884-A1894, as well as evidence that the LXP and the Genesis Versi-Pro ("Versi-Pro"), a smaller version of the LXP, incorporated elements of the Allied MT's design. A1328-A1329, A1497-A1498, A1562. Genesis earned approximately $14 million in gross revenue from its sale of LXPs. A1650, A1827.

Following the launch of the LXP, Allied and John Ramun filed suit in the District Court for the Northern District of Ohio for misappropriation of trade secrets in violation of the Ohio Uniform Trade Secrets Act ("OUTSA") and the Lanham Act, and raised other state-law claims. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702 (N.D. Ohio 2009). Upon reading Allied's complaint, Mark Ramun installed file-deleting software on his laptop in an effort to destroy the information he had retained from Allied. A1250-A1258.

The district court granted Genesis's motion for summary judgment as to Allied's Lanham Act claim and most of its state-law claims, but denied it as to the OUTSA claim. *See Allied Erecting & Dismantling Co.*, 649 F. Supp. 2d 702. Following the trial, the jury found Genesis and Mark Ramun jointly and severally liable for misappropriation and awarded $3,046,800 in unjust-enrichment damages. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 06-114, 2010 WL 4818367, at *1, *14 (N.D. Ohio Nov. 19, 2010) ("*Allied*"). The jury did not award Allied damages for lost profits, however, and (in a bifurcated proceeding) declined to award punitive damages against Genesis. *Id*. at *1. Following the verdict, the district court granted Genesis's

3

renewed motion for judgment as a matter of law and vacated the jury's unjust-enrichment award. *Id.* at *29-30. This appeal ensued.

## II. Discussion

### A. The Jury's Award of Unjust-Enrichment Damages

#### 1. Standard of Review

The court reviews a district court's decision regarding a renewed motion for judgment as a matter of law de novo. *Stinson v. Crye-Leike, Inc.*, 198 F. App'x 512, 514 (6th Cir. 2006) (citation omitted). Judgment as a matter of law is appropriate only "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a); *see Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir. 2001) ("Judgment as a matter of law is appropriate only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party." (internal quotation marks omitted)). When making its determination, the court may not "reweigh the evidence or assess the credibility of witnesses." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011). Instead, the court must view the evidence in the light most favorable to the non-moving party and decide whether reasonable minds could only find in favor of the movant. *E.g., Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006) (citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)).

#### 2. The district court's vacatur of the jury award

Allied argues that the district court erred in granting judgment as a matter of law with respect to the jury's award of unjust-enrichment damages. First Br. 31-36; Third Br. 4-16. As support,

Allied relies on Plaintiffs' Exhibit 95 – a 2006 Genesis budget that projected a 23% profit margin for the LXP for that year – as well as evidence that Genesis earned approximately $14 million in gross revenue from its sales of the LXP. First Br. 33-34. Genesis responds that Allied failed to establish that Genesis had in fact profited on the LXP and Versi-Pro, noting that Plaintiffs' Exhibit 95 was a mere profit *projection*, and that Allied failed to show that Genesis otherwise benefitted from Allied's trade secrets. Second Br. 44-47. The district court agreed, concluding that Allied "presented no evidence which would give the jury a principled way to find that Genesis received a benefit from having the trade secrets, much less a manner in which to calculate any such benefit." *Allied*, 2010 WL 4818367, at *4.

Plaintiffs bear the burden of proving damages and may not recover if their entitlement to damages is based upon speculation or conjecture. *Blair v. McDonagh*, 894 N.E.2d 377, 385-86 (Ohio Ct. App. 2008). "If it is certain that damages have resulted, [however,] mere uncertainty as to the amount will not preclude the right of recovery." *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, No. 94719, 2011 WL 198662, at *4 (Ohio Ct. App. 2011) (citation omitted); *see also Marzullo v. J.D. Pavement Maint.*, No. 96221, 2011 WL 6141624, at *7 (Ohio Ct. App. 2011) ("As a general rule, once a plaintiff establishes a right to damages, that right will not be denied because damages cannot be calculated with mathematical certainty." (internal quotation marks omitted)). Ohio courts have defined sufficient certainty regarding the existence of damages as "'that degree of certainty of which the nature of the case admits.'" *Fouty v. Ohio Dep't of Youth Servs.*, 855 N.E.2d 909, 918 (Ohio Ct. App. 2006) (quoting *Bemmes v. Pub. Emps. Retirement Sys.*, 658 N.E.2d 31, 36 (Ohio Ct. App. 1995)). "Unjust enrichment occurs when a person has and retains

money or benefits which in justice and equity belong to another . . . ." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (internal quotation marks omitted); *see BFI Waste Sys. of Ohio, Inc. v. Prof'l Constr. & Safety Servs., Inc.*, No. 06CA008972, 2008 WL 834428, at *2 (Ohio Ct. App. 2008) ("As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them." (internal quotation marks omitted)).

In this case, the jury found that Genesis and Mark Ramun made unauthorized use of Allied's trade secrets in developing the LXP and Versi-Pro, and it is uncontested that Genesis earned approximately $14 million in gross revenue from the LXP. True, Plaintiffs' Exhibit 95 merely presents a (necessarily imperfect) projection that Genesis would profit from the LXP. It is corroborated, however, by evidence that the profit margin on the comparable Allied MT was itself 35 percent and by expert testimony that Genesis's profit margin would naturally be approximately 10 to 15 percent lower given that the company sold to attachment dealers, and not directly to end users. A1816; A1959. This evidence provides a basis, although admittedly attenuated, from which to calculate the *amount* Genesis profited from the LXP. Under Ohio case law, however, uncertainty in this regard does not bar recovery. It is neither speculative nor conjectural that Genesis unjustly benefitted from its use of Allied's trade secrets. Because Allied presented sufficient evidence from which a reasonable jury could conclude with the requisite certainty that Genesis profited as a result of the misappropriation, we reverse the district court's grant of judgment as a matter of law.

## B. Jury Instructions and Evidence on Lost Profits

### 1. Standard of Review

The court reviews the legal correctness of jury instructions de novo, *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998), and reviews a district court's rejection of proposed instructions for an abuse of discretion, *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000). "A new trial is not required 'unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law.'" *Morgan v. N.Y. Life Ins. Co.*, 559 F.3d 425, 434 (6th Cir. 2009) (quoting *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

The court reviews a district court's evidentiary rulings for abuse of discretion. *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 378 (6th Cir. 2008). "Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial." *Id.* (internal quotation marks omitted).

### 2. The district court's evidentiary rulings and jury instructions on lost profits

Allied next challenges the district court's evidentiary rulings and jury instructions on the matter of lost profits, arguing that the court improperly allowed the jury to consider the existence of alternative, non-infringing products in the marketplace. First Br. 16-30; Third Br. 1-4.

Following the trial, the district court issued the following jury instruction defining lost profits:

> "Actual loss" means Allied's lost profits. Damages on the basis of lost profits may not be remote, uncertain, or speculative in nature. On the other hand, damages do not need to be certain; once the fact of some damage has been shown, Allied need only prove its damages with reasonable certainty; however it must show substantial

> evidence to permit you to draw the reasonable inferences and make a fair and reasonable assessment of the amount of damages.
>
> Allied claims that it lost sales and therefore lost profits because the LXP and Versi-Pro were in the market. Allied contends that every customer of an LXP or Versi-Pro would have purchased an Allied MT, if the LXP and the Versi-Pro were not in the market. Defendants contend that there are many competitors of Allied and Genesis and that customers of the LXP or Versi-Pro might have purchased a product of any number of other competitors depending on the specific needs of the customer, and would not necessarily have purchased an Allied MT if the LXP and Versi-Pro were not in the market.

A2468. In the accompanying verdict form, the district court then asked, "has Allied proven by a preponderance of the evidence that customers who bought a Genesis LXP or Versi-Pro would have bought an Allied MT? . . . . If your answer is 'yes,' please state the amount of lost profits proximately caused by the defendants' misappropriation . . . ." A2473.

Allied argues that these instructions are incorrect as a matter of law. First Br. 17-22. It contends that a plaintiff may demonstrate lost profits based solely upon the defendant's sales of the product that incorporates the trade secrets. First Br. 17-22. Allied concedes that plaintiffs must demonstrate that the misappropriation caused the plaintiffs loss, but argues that causation is established by the fact that the defendant sold an infringing product. First Br. 22; Third Br. 2. The court cannot endorse this argument.

Plaintiffs in an OUTSA action may recover "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Ohio Rev. Code Ann. § 1333.63(A); *see Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 485 (6th Cir. 2002) ("When the misappropriated trade secret is used to field competing products, the best measure of damages is the plaintiff's lost profits or the defendant's

illicit gains."). Ohio law treats these two theories as distinct and requires (for an award of lost profits) that a plaintiff demonstrate with reasonable certainty that it suffered a loss as a result of the defendant's wrongdoing. *See Columbus Steel Castings Co. v. Alliance Castings Co.*, Nos. 11AP-351, 11AP-355, 2011 WL 6931518, at *7 (Ohio Ct. App. Dec. 30, 2011) (affirming lost-profits award where the jury heard evidence that the plaintiff "lost profits due to the [trade-secrets] misappropriation"); *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*, 770 N.E.2d 1068, 1083 (Ohio Ct. App. 2001) ("Lost profit damages are measured by the loss, including lost profits the plaintiff business sustained as a result of the tortious interference, *not by its effect upon the defendant's business*." (emphasis added)). By contrast, as noted, "[u]njust enrichment is a theory of restitution based, not upon a plaintiff's loss, but a defendant's gain." *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, No. 2010-T-0004, 2010 WL 4470724, at *6 (Ohio Ct. App. 2010).

Given the burden plaintiffs bear in proving damages, the district court properly required that Allied provide some demonstrable link between Genesis's misappropriation and Allied's loss. Allied cites no binding authority to support the presumption it requests – that misappropriation of trade secrets necessarily results in a plaintiff's lost profits – and Ohio law dictates otherwise.[1]

---

[1] Allied cites no controlling authority as support. Moreover, the precedent from other circuits upon which Allied relies does not support its theory that causation for lost profits resulting from misappropriation may be presumed from the defendant's sales. In *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937 (7th Cir. 1996), for instance, the issue of market competition did not arise because defendants conceded that the sales would have been made by the plaintiff absent the misappropriation. *Id.* at 945. Genesis made no such concession here. In addition, the case on which Allied relies most heavily – *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832 (N.D. Ill. 2008) – is neither controlling nor particularly supportive of its claim. The district court

Adopting Allied's theory (that lost profits may be established *solely* on the basis of profits the defendant gained through its misappropriation) would allow recovery even in the absence of evidence that the plaintiff in fact suffered loss and would blur any distinction between the unjust-enrichment and lost-profits theories of damages. Accordingly, we hold that the district court did not err as a matter of law.

Allied next argues that the district court erroneously required the jury to find that *every* purchaser of the LXP or Versi-Pro would have bought the Allied MT. First Br. 26-30. Put simply, this is not true. In its instructions, the lower court did note that it was *Allied's* contention that every Genesis customer would have purchased the Allied MT – a summary borne out by the record. A34 (noting in opposition to Genesis's motion in limine that "a customer who sought and purchased an LXP or Versi-Pro tool would have no choice other than to purchase a comparable Allied MT if Genesis had not misappropriated Allied's trade secrets"), A727 (Allied's counsel's opening statement: "The LXP and MT compete in a league of their own, such that we will establish that had Genesis not been in the market, had Genesis not been offering a competing tool, Allied would have made these sales."). In its interrogatory, however, the district court asked merely "whether customers who bought a Genesis LXP or Versi-Pro would have bought an Allied MT." As noted,

in *RRK Holding Co.* found that judgment as a matter of law was inappropriate given that, "had the trade secret not been misappropriated, consumers would not have had the option to buy from the Defendant, but would have presumably bought from the Plaintiff." *Id.* at 835-36. The district court also declined to grant judgment as a matter of law on the basis of other market participants as it was unclear whether the alternative, non-infringing products were sufficiently similar to the product in question. The instant appeal arises from a very different posture and presents a distinct factual background.

the district court correctly required Allied to show that the misappropriation in fact caused a loss, relying on the theory that Allied proffered at trial and noting the requisite certainty. Though the district court could have clarified that the jury need not find that every Genesis customer would have purchased from Allied, imprecision does not justify a new trial.

Again relying on its theory of lost profits, Allied argues that it was improper for the district court to admit evidence of alternative, non-infringing products that Genesis's customers may have bought but for the misappropriation. First Br. 28-29. As explained, it was entirely appropriate for the district court to require that Allied prove its loss with reasonable certainty, and it was Allied's contention at trial that all customers of the LXP and Versi-Pro would have purchased the Allied MT, given the lack of alternatives. Accordingly, we find no abuse of discretion in the district court's admitting relevant evidence on this matter.

## C. Allied's Motion for a Permanent Injunction

### 1. Standard of Review

"When a district court denies a permanent injunction, we review the court's legal conclusions de novo, its factual findings for clear error, and the scope of the injunction for abuse of discretion." *Saieg v. City of Dearborn*, 641 F.3d 727, 733 (6th Cir. 2011).

### 2. The district court's ruling on injunctive relief

Allied argues that the district court erred in denying its motion to enjoin permanently Genesis's production of the LXP and Versi-Pro. First Br. 54-61; Third. Br. 25-30. Specifically, Allied avers that the district court was bound by the jury's finding of misappropriation to grant injunctive relief in Allied's favor. First Br. 56-57. Allied is mistaken.

11

The OUTSA provides that "[a]ctual or threatened misappropriation may be enjoined." §
1333.62(A). Because the statute does not list criteria pursuant to which an injunction should issue,
movants bear the burden of demonstrating the four familiar prerequisites for injunctive relief:
likelihood of success on the merits, irreparable harm, absence of harm to others, and that the
injunction would favor the public interest. *See Columbus Steel Castings Co.*, 2011 WL 6931518,
at *9-10. It is well established that "an injunction generally should not issue if there is an adequate
remedy at law." *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir.
1992). While some district courts have found that irreparable harm is generally presumed when the
defendant is found to have misappropriated trade secrets, this conclusion rests on the assumption that
the harm resulting from the loss of trade secrets will be difficult to measure in monetary terms. *See,
e.g.*, *Allure Jewelers, Inc. v. Ulu*, No. 12-91, 2012 WL 367719, at *4 (S.D. Ohio Feb. 3, 2012)
(noting that "the loss of trade secrets is usually considered an irreparable harm that cannot be
measured in money damages" (citing *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp.
2d 853, 867 (S.D. Ohio 2008)); *see also Columbus Steel Castings Co.*, 2011 WL 6931518, at *10
("We find that the facts and circumstances of this case, *particularly the zero damages verdict*, lend
themselves to a presumption of harm and a finding that money damages could not adequately
compensate Columbus Steel." (emphasis added)). Additionally, an unreasonable delay in filing for
injunctive relief will weigh against a finding of irreparable harm. *See Aero Fulfillment Servs., Inc.
v. Tartar*, No. C-060071, 2007 WL 120695, at *5 (Ohio Ct. App. 2007)

In this case, the jury measured the harm Allied suffered in monetary terms by awarding
unjust-enrichment damages. Below, the district court found that Allied had failed to provide any

support for the argument that it was not adequately compensated by the jury's monetary award – a particularly conspicuous failure in light of the jury's finding that Allied did not suffer lost sales as a result of the misappropriation. *See Allied Erecting & Dismantling Co. v. Genesis Equip. Mfg., Inc.*, No. 06-114, 2010 WL 3370286 (N.D. Ohio 2010). In addition, Allied did not request injunctive relief until after the jury rendered its verdict, which the district court found to weigh against a finding of irreparable harm. *Id.* at *2. Regardless of the merits of generally presuming irreparable harm in trade-secrets litigation, the court finds that such a presumption is not applicable here and that the district court did not err in finding that Allied failed to demonstrate irreparable harm.

**D. New Trial on Punitive Damages**

**1. The district court's omission of Mark Ramun from the punitive-damages instructions**

Allied argues that a new trial is warranted on the issue of punitive damages based upon the district court's omission of Mark Ramun from instructions to the jury. First Br. 38-43; Third Br. 17-21. Of note is a regrettable disagreement regarding relevant in-chambers, off-the-record representations made by counsel for Allied. The district court stated in its opinion, and Genesis concurs, that during a conference among the parties and the court, Allied's counsel advised that Allied was seeking punitive damages only against Genesis, and not against Mark Ramun. *See Allied*, 2010 WL 4818367, at *22; Second Br. 48-49. Allied "strenuously disputes" this account of the off-the-record conversations, but (declining – for propriety's sake – to challenge the lower court's description) argues that regardless it properly objected to Mark Ramun's omission in court and on the record. First Br. 40.

13

A plaintiff may recover punitive damages for a violation of the OUTSA if it demonstrates that the misappropriation was "willful and malicious." § 1333.63. If a party fails to object to jury instructions, however, the court considers the issue waived absent a showing of plain error. *See, e.g.*, *Scott v. Miller*, 361 F. App'x 650, 652 (6th Cir. 2010). Vague or imprecise objections will not preserve the matter for appeal. *See, e.g.*, Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); *Johnson v. City of Memphis*, 444 F. App'x 856, 859 (6th Cir. 2011) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.").

Allied's contention that it preserved its objection to the jury instructions is belied by a closer look at the trial transcript:

> THE COURT: Before we bring the jury in, I am going to note for the record that the court and counsel met in chambers. We went over the Court's charge informally. Now I will allow counsel to state any exceptions or anything else that counsel wish to put on the record with respect to the charge and anything else you have before the court before the jury is in the courtroom.
>
> [Counsel for Genesis]: . . . Your Honor, we moved informally in chambers to have [Paladin Brands, LLC ("Paladin")] dismissed as a Defendant in this case. My understanding is that the Court is inclined to grant that motion?
>
> THE COURT: Is there any objection to –
>
> [Counsel for Allied]: Yes, Your Honor. We object to the dismissal or refusal to charge for Paladin, or Mark Ramun.
>
> THE COURT: Okay. Well –
>
> [Counsel for Genesis]: Well, we are not just talking about –

> THE COURT: Yeah, we are talking about dismissing Paladin. I don't think there is any reason Paladin should have been in this case. There has been no evidence at all against Paladin, anything to link Paladin to Genesis. So I will grant the motion to dismiss Paladin.
>
> \*          \*          \*
>
> [Counsel for Mark Ramun]: Your Honor, do we need to put on the record Mark Ramun's not being – there is going to be no instruction on Mark Ramun on punitive damages?
>
> THE COURT: Yeah, go ahead, sure.
>
> [Counsel for Mark Ramun]: Yes, I am just confirming that there will be no instruction on punitive damages as it relates to Mark Ramun.
>
> THE COURT: Right. The Court is not going to include Mark Ramun in the verdict for punitive damages, only Genesis.
>
> [Counsel for Mark Ramun]: Right.
>
> THE COURT: Right. All right. Bring the jury in.

A2402, A2405. At best, Allied offered a vague objection regarding Mark Ramun in the context of dismissing Paladin entirely, and did not specifically object following the district court's clear ruling on the matter. Moreover, Allied identifies no plain error. This issue is therefore waived.

## 2. The district court's evidentiary rulings

Allied also contends that a number of erroneous evidentiary rulings justify a new trial on the issue of punitive damages. First Br. 44-51; Third Br. 21-23. First, Allied argues that the district court erred in excluding deposition testimony from David Palvere ("Palvere"), Genesis's Director of Business Development. First Br. 44-45. In his testimony, Palvere expressed his concerns over hiring Mark Ramun, "a young man that was competing against his family already in the marketplace

15

and trying to sell his products through another company, A-[W]ard [and] through Genesis, just didn't seem very ethical." A624. Allied believes this testimony to be indicative of Genesis's willful mental state in acquiring Allied's trade secrets (suggesting that the company ignored internal concerns) and that it is admissible to impeach statements by Genesis's president, who testified that no one at Genesis objected to hiring Mark Ramun. First Br. 45-46; A1933-A1934.

As detailed above, district courts have broad discretion in admitting or excluding evidence, and even an erroneous evidentiary ruling will not justify a new trial unless the appellant can show it would have caused a different result. *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001) (noting district courts' "very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence" (internal quotation marks omitted)). Here, the district court ruled that Palvere's testimony had "only slight, if any probative value" (given that the testimony concerned hiring Mark Ramun and not the misappropriation itself) and posed a substantial risk of prejudicing defendants (inasmuch as it implied that Mark Ramun was an unethical person). *See Allied*, 2010 WL 4818367, at *23-24. Allied has failed to demonstrate that the district court exceeded its wide discretion in reaching this reasonable conclusion.

Allied next argues that the district court erred by excluding evidence of separate trade-secrets litigation between Genesis and another competitor, Stanley-LaBounty ("Stanley"). First Br. 46-49. In that action, Stanley challenged Genesis's use of the "shrink fit" component of a similar attachment device, arguing that Genesis had misappropriated its trade secret. First Br. 47-48; A275-A289. The case was settled without the admission of liability. A275-A289. Allied contends that the Stanley litigation was admissible to demonstrate that Genesis knew the information it obtained from Mark

Ramun (including Allied's use of the "shrink fit") was a trade secret, thus rendering its misappropriation willful. First Br. 46-48. A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. As the lower court noted, the Stanley litigation was settled without a finding that the "shrink fit" warranted trade-secret protection. Thus, the court concluded that the prejudicial value of the litigation evidence (suggesting that Genesis was routinely a defendant in misappropriation actions) outweighed its probative value (because there was no finding of liability). Again, Allied fails to demonstrate that the district court abused its discretion in this decision.

Allied also argues that the Stanley litigation was admissible to impeach the testimony of Genesis's chief engineer who, despite having submitted an affidavit in the Stanley litigation, testified that he did not have knowledge of "whether anybody else in the attachment industry would consider a shrink fit a trade secret." A2162. Regardless of the merits of the district court's decision, Allied has failed to show that this isolated evidentiary ruling regarding the engineer's statement would have resulted in a different jury verdict on the question of whether Genesis willfully and maliciously misappropriated Allied's trade secrets. In keeping with the court's standard of review, a new trial is not warranted on this basis.

Finally, Allied argues that the district court erred in admitting evidence of the difficult relationship between John and Mark Ramun. First Br. 49-51; Third Br. 22-23. As the lower court found, however, evidence concerning this father-son relationship was inevitable, given the facts of the case. More to the point, Allied has made no showing (and it is doubtful) that the isolated

17

evidence concerning these familial relations affected the jury's finding that Genesis did not act willfully or maliciously, and a new trial is not warranted on this basis.

Allied similarly notes that counsel for Genesis and counsel for Mark Ramun made irrelevant and disparaging remarks regarding John Ramun in their opening and closing statements. First Br. 49-51. The record indeed reveals counsels' inappropriate remarks. A764 ("[T]o this day, John Ramun has never met his grandson."); A2343 ("Don't encourage John Ramun's behavior. He's a bully."). Though the court does not countenance such comments, we "may only set aside the verdict if 'there is a reasonable probability that the verdict' was influenced by those arguments." *Bridgepower Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 478 (6th Cir. 2007) (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)). In so deciding, the court looks to

> the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

*Michigan First Credit Union v. Cumis Ins. Soc'y, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011). Allied has failed to demonstrate that the jury's verdict on punitive damages was in any fashion influenced by these remarks. Given their infrequency and their lack of relevance to Genesis's and Mark Ramun's mental state, it is unlikely that they affected the jury's findings and a new trial is not warranted on this basis.

### 3. The district court's decision on spoliation

Finally, Allied argues that a new trial on punitive damages is warranted based upon the district court's refusal to instruct the jury to "infer that the evidence destroyed would have disclosed facts adverse to Mark Ramun and Genesis, the parties that destroyed the evidence." First Br. 51-53. Allied notes that Mark Ramun admitted to destroying documents on his personal laptop upon learning of the instant action. First. Br. 51-52. Genesis responds that there was no actual destruction of evidence, as all the documents Mark Ramun sought to destroy were backed-up elsewhere and later submitted during discovery, and thus that no (successful) spoliation occurred. Second Br. 56-57.

"It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998). The district court has broad discretion when deciding whether to issue an adverse-inference instruction. *See Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009) (en banc). For the jury to receive an adverse-inference instruction, the non-spoliating party must make "some showing indicating that the destroyed evidence would have been relevant to the contested issue," *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554 (6th Cir. 2010) (quoting *Kronisch*, 150 F.3d at 127), namely, in this case, whether Genesis acted willfully or maliciously. Allied has made no such showing, and it is doubtful that these (Allied-produced) documents would reveal Genesis's state of mind. The district court, therefore, did not abuse its discretion.

19

**E. Allied's Motion for Attorney's Fees and Prejudgment Interest**

Allied also requests that we reverse the district court's refusal to award attorney's fees. First Br. 53. The OUTSA allows the district court to award attorney's fees upon a finding of "willful and malicious misappropriation." § 1333.64(C). Because the jury reasonably found that Genesis did not act willfully or maliciously, Allied is not entitled to fees.

Finally, Allied states that its motion for prejudgment interest pursuant to Ohio Rev. Code Ann. § 1343.03(C) should be addressed anew upon a retrial on damages. First Br. 54. Because the case does not warrant a new trial, Allied's (abbreviated) request is moot.

**F. Genesis's Motion to Vacate the Jury Finding on Misappropriation**

Genesis cross-appeals the denial of its renewed motion for judgment as a matter of law. Second Br. 64-83. Genesis argues that a reasonable jury could not have found it liable for misappropriation under the OUTSA, as the relevant components of the Allied MT did not fit the statutory definition of trade secrets. Second Br. 64-83.

To prevail on a claim under the OUTSA, a plaintiff must establish "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mort. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008). The statute defines "trade secrets" as

information . . . that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code Ann. § 1333.61(D).

### 1. Disclosure in Allied's Patents

Genesis argues that the Allied MT lost trade-secret status when Allied filed its April 2001 patent application, which predates Mark Ramun's joining Genesis. Second Br. 65-68; Fourth Br. 5-6. First, Genesis avers that the relevant information in the GATOR 34 – a schematic of the Allied MT contained on one of the misappropriated discs and that Allied avers contains protectable trade secrets – was already disclosed in certain figures provided in Allied's patent applications. Second Br. 66-68. Additionally, Genesis argues that the two elements of the Allied MT – the "one-piece extended shaft" and the manner in which the "pivot group" operates – are disclosed elsewhere in the patents. Second Br. 70-71, 74-75.

As noted, information that has been publicly disclosed, including through the filing of patent applications, is no longer eligible for trade-secret protection. *See, e.g.*, *Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*, 936 N.E.2d 122, 126 (Ohio Ct. App. 2010). "Trade-secret protection is not lost, however, for processes or specifications related to the device that are not disclosed in the published patent materials." *Id.* (citation omitted).[2] In addition, this court has found that a defendant may not avoid a finding of misappropriation based upon a public patent if the defendant does not, in fact, obtain information from that patent. *See Vitro Corp. of Am. v. Hall Chem. Co.*, 254 F.2d 787,

---

[2] The court in *Rogers Industrial Products* relies on the district court's opinion in *Allied* for this proposition. Because the Ohio Court of Appeals has adopted this proposition, we properly recite it here.

793 (6th Cir. 1958) ("It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not."); *see also Novak v. Farneman*, No. 10-768, 2010 WL 4643002, at *5 n.7 (S.D. Ohio Nov. 9, 2010).

Below, Allied presented sufficient evidence (including testimony from John Ramun and Genesis's own expert) that the GATOR 34 schematic contained information not available in the figures Allied provided in its patent applications. A872-A873, A1091-A1092, A2033. For instance, Allied produced evidence that the GATOR 34 – unlike the information contained in the patent applications – was scalable and would thus allow a competitor to duplicate the tool. A872-A873, A2033. The jury similarly received evidence that the one-piece extended shaft was not fully disclosed in Allied's patents. A1611. Moreover, Allied presented evidence that Genesis's engineers did not rely on Allied's patents to develop the LXP or Versi-Pro, A1554, and may not avoid a finding of misappropriation by arguing disclosure in Allied's patents.

### 2. Particular features of the Allied MT

Genesis also avers that certain aspects of the Allied MT are not trade secrets. First, Genesis contends that the Allied MT's use of the "shrink fit" (a combination of a metal tube and a shaft that allows the shaft to expand and contract based upon heat) is commonly known and thus not protectable. Second Br. 68-70. The jury was, however, presented with testimony from, *inter alia*, John Ramun and Allied's expert that Allied made unique use of the "shrink fit" that other manufacturers had not utilized previously. A822, A1522-A1528. While some novelty is required for information to constitute a trade secret, "a new combination of known steps or processes can be entitled to trade secret protection." *Arco Indus. Corp. v. Chemcast Corp.*, 633 F.2d 435, 442 (6th

Cir. 1980); *accord Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 411 (6th Cir. 2006). The jury was presented with a sufficient evidentiary basis from which to conclude that Allied's use of the "shrink fit" was a protectable trade secret.

Genesis also argues that the LXP and Versi-Pro do not use the one-piece extended shaft or roller-thrust bearings (both of which Allied identified as trade secrets). Second Br. 72-74. Allied's expert witness, however, testified to the contrary, stating the LXP uses the thrust bearings in the same manner as the Allied MT and that the Versi-Pro uses the one-piece extended shaft. A1533, A1631-A1632. Moreover, Genesis's own witness, a professor of mechanical engineering, testified that he believed both the LXP and Versi-Pro made use of the one-piece extended shaft. A2050. Similarly, Genesis argues that the manner in which the "main shaft" of the Allied MT is "retained in the pivot group" is too vague to be a trade secret. Second Br. 76-77. Again, Allied's expert testified to the contrary. A1536-A1537. Finally, Genesis argues that Allied's business plan for the Allied MT does not constitute a trade secret because it has no value to Genesis. Second Br. 77-83. Yet again, Allied presented evidence to the contrary, demonstrating that the business plan contained actual cost and production data and details concerning the inner workings and the functionality of the Allied MT. A865-A869. Presented with this evidence, a reasonable jury could have concluded that the business plan constitutes a protectable trade secret.

It is neither the province of this court to weigh the evidence presented at trial nor to allow relitigation of claims properly heard below. Notably, most of Genesis's arguments regarding misappropriation were heard and fairly rejected by the district court in its denial of summary judgment. Accordingly, we find that a reasonable jury could have found these components of the

23

Allied MT and Allied's business plan constituted trade secrets at the time Genesis hired Mark Ramun, and were therefore entitled to protection under the OUTSA.

## G. Genesis's Motion for a New Trial on Misappropriation

Finally, Genesis asks the court to remand for a new trial on misappropriation if the jury's unjust-enrichment award is reinstated, proffering three arguments as support. Second Br. 83-92. First, Genesis argues that the district court erred by determining as a matter of law that the Allied MT owner's manual, distributed to some customers, was confidential. Second Br. 85-89. Relying on a confidentiality stamp placed on certain pages,[3] the district court determined the owner's manual to be a "limited, confidential disclosure" of product information, and did not constitute the public disclosure that would eliminate the Allied MT's trade-secret status. A2466. Genesis contends that the district court thereby deprived Genesis of the opportunity to rely on the owner's manual to argue that Allied failed to take reasonable steps to maintain the secrecy of its information. Second Br. 88; Fourth Br. 29.

As noted, parties must take reasonable steps to maintain secrecy to be entitled to protection under the OUTSA. § 1333.61(D). Whether the party claiming trade secrets has taken reasonable steps is a circumstance-dependent question of fact typically given to the jury. *See Niemi v. NHK Spring Co.*, 543 F.3d 294, 301 (6th Cir. 2008). "[D]isclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade

---

[3] Specifically, the stamp states that "this drawing and all information thereon is the sole property of Allied. It is loaned confidentially with the clear understanding that it will not be copied, will be returned upon request and will not be used directly or indirectly in any way detrimental to [Allied's] interest." *Allied Erecting & Dismantling Co.*, 649 F Supp. 2d at 715.

secret." *Columbus Bookkeeping & Bus. Servs., Inc. v. Ohio State Bookkeeping, LLC*, No. 11AP-227,

2011 WL 6938340, at *4 (Ohio Ct. App. Dec. 30, 2011) (internal quotation marks omitted).

As an initial matter, the district court tracked the OUTSA by defining "trade secret" as

"information [that] is the subject of efforts that are reasonable under the circumstances to maintain

its secrecy." A2464. Accordingly, the district court instructed the jury as follows:

> Allied must show that it took reasonable steps under the circumstances to protect its
> trade secrets. . . . Some factors you may consider in determining whether Allied used
> reasonable efforts are:
> *       *       *
> (4) Whether Allied generally maintained tight security to protect the alleged trade
> secret, and did not voluntarily disclose it to others, except in confidence.

A2465. In regards to the Owner's Manual, the instructions provided that

> The designation of a document as "confidential" does not automatically make
> anything contained in the document a trade secret. . . . Allied's manual has been
> determined as a matter of law to be a limited, confidential disclosure. Therefore, if
> something is a trade secret, the fact that it appears in the owner's manual does not
> take away its trade secret status. However, items or drawings contained in the
> owner's manual, even though confidential, are not automatically trade secrets.

A2466. In denying Genesis's motion for a new trial, the district court affirmed its previous ruling

at the summary judgment stage that "[b]ecause the Allied MT Owner's Manual is not

publicly disclosed, Defendants cannot avoid liability by alleging that the Owner's Manual discloses

Allied's trade secrets." *Allied*, 2010 WL 4818367, at *12.

An important distinction is required here. It is true that the district court found that

publication in the Owner's Manual did not constitute public disclosure, thereby eradicating the

Allied MT's trade-secret status. It did not, however, determine whether Allied took the requisite

reasonable steps (including its use of the confidentiality stamp) to protect the secrecy of the Allied

25

MT and related information generally. Instead, the lower court correctly instructed that it was the jury's role to determine whether, under the circumstances, Allied met this burden.

Genesis next argues that the jury instructions failed to clarify that to impose liability for misappropriation the jury had to find that trade secrets existed in August 2003 (when Mark Ramun gave Allied's documents to Genesis) and not in 2001 (when Mark Ramun left Allied). Second Br. 89-90; Fourth Br. 32-34. The instructions were prejudicial, Genesis contends, by allowing the jury to find for Allied even if the documents were no longer secret by the time Genesis obtained them. Second Br. 90. Specifically, Genesis challenges two jury interrogatories:

> 1. Do you find unanimously that Allied has proven by a preponderance of the evidence that any of the information Mark Ramun possessed contained trade secrets as that term has been defined for you?
>
> 2. If you have identified any items as trade secrets in response to Interrogatory No. 1 above, do you find unanimously that Allied has proven by a preponderance of the evidence that the Defendants misappropriated trade secrets?

A2471-A2472. As noted, however, the court reviews jury instructions as a whole. Any confusion the interrogatories may have generated was cured by the detailed definitions of "trade secret" and "misappropriation" that the district court provided to the jury. A2464-A2465, A2466-A2467. Viewed *in toto*, therefore, the district court's instructions were not misleading.

Finally, Genesis argues that the testimony of Allied's expert witness, Ron Karani ("Karani"), was conclusory and lacking in foundation and thus inadmissible pursuant to Rule 702 of the Federal Rules of Evidence. Second Br. 90-92. Specifically, Genesis complains that Karani had insufficient experience in the attachments industry to give him a proper foundation and gave conclusory testimony regarding whether the relevant components of the Allied MT should be considered trade

secrets. Second Br. 90-92.

The court reviews a district court's decision to admit expert testimony for abuse of discretion. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528 (6th Cir. 2008). A district court's role as gatekeeper to prevent misleading and unreliable expert testimony "is not to determine whether [the testimony] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529-30. Nevertheless, "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (internal quotation marks omitted). Instead, the jury may "give [the expert's] testimony as much credence as it felt the testimony deserved, particularly in light of [the] [d]efendant's cross-examination exposing [the expert's] lack of familiarity with the given topics." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998). In addition, "[a]n [expert] opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

Below, the district court found that Karani's testimony was admissible pursuant to Rule 702. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 06-114, 2009 WL 8592874 (N.D. Ohio 2009). Specifically, the court noted, *inter alia*, that Karani has a degree in mechanical engineering, had worked, and was formerly an executive in, the attachments industry, had reviewed components of the LXP and Allied MT, and had reviewed Allied's business plan. *Id.* at *3-4. Though Genesis highlights the tests and analysis that Karani did not perform, Genesis fails to show that the district court abused its discretion in concluding that Karani was qualified to testify. Properly viewed, Genesis's arguments reflect a concern with the weight of Karani's testimony, rather

27

than its admissibility. This concern is properly addressed during cross-examination, not in a motion for a new trial. In addition, because Karani was an expert witness, the fact that his testimony addressed an ultimate issue in the case (the trade-secret status of the Allied MT) did not warrant its exclusion. We therefore affirm the district court and find that a new trial on the issue of liability is not warranted.

### III. Conclusion

The court reverses the district court's vacatur of the jury award for unjust enrichment damages and affirms on all other matters.