## AMALGAMATED INDUSTRIES LTD., Plaintiff–Appellee,

v.

## TRESSA, INC., Defendant–Appellant.

### No. 01–5708.

United States Court of Appeals,
Sixth Circuit.

June 13, 2003.

Before: BOGGS and NORRIS, Circuit Judges; and BELL, Chief District Judge.*

PER CURIAM.

Tressa, Inc. (Tressa), a manufacturer and distributor of hair care products, appeals a district court judgment in favor of Amalgamated Industries Ltd. (AIL), a developer of hair care products, stemming from the breach of a 1989 Licensing Agreement between the two parties. The district court, following a three-day bench trial in December 2000, found in AIL's favor on claims of breach of contract and of misappropriation of trade secrets. Tressa claims that the district court judg-

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

ment must be vacated on the grounds that it cannot be held to have breached a contract previously breached by AIL, as determined by the district court in a prior suit between the parties, and furthermore that the action is barred by the doctrine of *res judicata* or, alternatively, collateral estoppel. Tressa also argues that AIL's claim for misappropriation of trade secrets is barred by the statute of limitations.

For the reasons that follow, we agree that the Licensing Agreement between the parties was effectively terminated in the prior suit. Nevertheless, we affirm the district court's award of damages to AIL on the basis of Kentucky's Uniform Trade Secrets Act (the Act), Ky.Rev.Stat. Ann. §§ 365.880 to 365.900, which provides civil remedies for the misappropriation of trade secrets outside of a contractual relationship. Furthermore, we view AIL's current complaint of new acts of misappropriation by Tressa as part of a single claim under the Act that began with Tressa's initial misappropriation of AIL's trade secret litigated in the prior suit, since each act is a misappropriation of the same information obtained by Tressa when the parties entered into the Licencing Agreement in 1989. As a result we hold that AIL's claim is not barred by the statute of limitations, since it was timely filed in the prior suit and these new claims should have remained within the context of that suit, instead of being filed as a separate suit.

## I

Tressa and AIL entered into a Licensing Agreement (the Agreement) on July 5, 1989, in which AIL granted to Tressa the non-transferable right and exclusive license to manufacture and sell professional hair care products developed from AIL's information, technical data, processes, formulas and other data relating to the prod-

ucts (the Information). The contract states in relevant part:

. . .

*2. License. Subject to the terms of this agreement, licensor grants to licensee the nontransferable right and exclusive license to use "the information" to manufacture "the products" and to sell "the products" throughout the world. No license, express or implied, is granted to employ the information for any other purposes whatsoever.*

*3. Representations. Licensor represents, warrants and agrees that "the products" and "the information" will provide to licensee a complete line of permanent haircolor products satisfactory in performance and shade range to compete in the professional (salon) hair care industry and will include a powdered bleach.*

. . .

The Agreement further stipulated that Tressa would pay AIL a "nonrefundable technical development fee" of $100,000 and a licensing fee of four percent of the net sales collected by Tressa on each product sold, to continue "for as long as the formulas, "the products" and "the information" from [AIL] is being used." In essence, AIL was to give Tressa a formula consisting of a "base" and a "shade," which Tressa would then use to manufacture a line of hair-coloring products in exchange for a development fee and a licensing fee.

Tressa paid the development fee, but it is undisputed that the base part of the formula given by AIL to Tressa under the Agreement was unstable. Tressa modified the formula in order to remedy the problem and additionally claims to have changed certain shade formulas to provide coverage for gray hair, which it claims AIL's formulas could not do. Tressa marketed this modified product as a line of 35 hair-coloring shades under the name Co-

lourage, 21 of which were determined by the district court to be derived from AIL shade formulas "without substantial alteration" and 14 of which were blends of the original 21. Tressa did not pay AIL the royalties due under the Agreement for any of the shades of hair color it was producing, stating that it believed it had developed the formulas for Colourage without any assistance from AIL.

Tressa filed a complaint against AIL alleging breach of contract on August 10, 1990, commencing what the parties now refer to as the "prior litigation." AIL counterclaimed for misappropriation of trade secrets. At the conclusion of a five-day bench trial in 1992, a judgment was issued holding that AIL had breached the Agreement by providing an unstable base formula and that Tressa had misappropriated AIL's trade secrets, in violation of the Act, by using AIL's shade formulas in the development of its Colourage line. There was no issue with regard to the statute of limitations, since AIL's counterclaim was filed well within the three-year limitation period.

There was considerable confusion over the awarding of damages as calculated by the district court in the prior litigation. Although the court initially stated that its intention was to measure the damages for AIL's breach in terms of expectation damages, thereby placing the injured party in the same position it would have been in had the contract been performed, the court ultimately awarded damages for restitution, placing the party in breach in its position before the contract, and then disgorging any unjust enrichment.[1] The court simultaneously ruled on the counterclaim for misappropriation of trade secrets brought by AIL, holding that "Tressa in developing its own color shades, used and benefitted from [AIL's] color shades to the extent that Tressa misappropriated a trade secret owned by Amalgamated." Accordingly, the district court awarded AIL a "judgment against Tressa in the form of a licensing fee amounting to 1.68% of the net annual sales of Colourage," or 42% of the original license fee of 4% assessed in the contract.[2] In sum, the court effectively rescinded the contract and assessed damages resulting from Tressa's use of AIL's trade secret pursuant to the Act.

Directly after the final judgment was rendered in this prior litigation, cross motions for reconsideration were filed disputing whether or not Tressa should pay the newly assessed 1.68% licensing fee on the net sales of eight "new" shades, which were developed by Tressa subsequent to this first trial. AIL complained of this omission and Tressa claimed, as it similarly claimed in the prior litigation with regard to the original Colourage shades, that it had developed these eight new shades independently, from scratch, and without any use or benefit from AIL's shade formulas. The court held that it could not resolve this matter since additional proof would be needed in order to determine whether Tressa had used AIL's Information in developing the eight new shades, and thus it would be necessary to reopen the case. On July 26, 1993, Tressa tendered payment to AIL for the royalty

---

1. The court held that Tressa should recover its $100,000 technical development fee, less the amount it would have paid for the shades that it produced on the basis of AIL's formulas without such a contract and additionally subtracted Tressa's out-of-pocket expenses.

2. In awarding this figure, the district court used the contract as a basis for assessing the value of AIL's Information and reasoned that since Tressa had appropriated 21 of AIL's shades with a value of $42,000, instead of the originally agreed $100,000 development fee, AIL had in effect appropriated 42% of the product.

payments due and owing on Colourage from 1990 through 1992, but did not include in its calculations the sales of the eight new Colourage shades.

Tressa continued to pay royalty payments on the 21 original shades until February 1995, when it advised AIL that it had reformulated the shades because a key ingredient had become unavailable and that AIL should therefore expect to see a decrease in royalty payments as Tressa "phase[d] in the sales of the new formulations."[3] AIL advised Tressa that it must evaluate Tressa's formulas with the new ingredient in order to assess whether or not the reformulated shades were substantially different so as to justify the termination of royalty payments. In June 1995, Tressa provided AIL with the new formulas for the reformulated shades and AIL concluded that they were substantially derived from AIL's original formulas.

After attempting to resolve the dispute by agreement, Magistrate Judge Wehrman convened a telephone conference call with counsel for the parties on May 19, 1997, to discuss whether AIL should move to reopen the prior litigation or file a new action. Magistrate Judge Wehrman considered the issue and subsequently advised the parties on May 20, 1997, that the proper course of action would be to file a motion in the original lawsuit. As a result, AIL filed a motion on October 16, 1997, to enforce the prior litigation's final judgment. On the basis of AIL's motion, Magistrate Judge Wehrman reopened the prior litigation on October 29, 1997, setting a schedule for discovery.

During the course of discovery, AIL discovered that Tressa had developed two more hair-color products: Irresistible and Facets. AIL decided to file a new action alleging that Tressa had misappropriated the use of AIL's formulas in the development of these two new lines. On March 1, 1999, the parties filed a joint status report in which they agreed to consolidate this action with the prior litigation. However, on June 3, 1999, Magistrate Judge Wehrman instead removed the prior litigation from the docket and advised AIL that it should pursue all claims in the context of a new lawsuit.

Judge Bertlesman convened a three-day bench trial on December 4, 2000. At the conclusion of AIL's case, Tressa moved to dismiss AIL's misappropriation of trade secrets claim on the ground that it was not timely filed. The parties were instructed to file briefs on this issue. AIL proffered evidence in the form of an affidavit by its counsel, relating the parties' pre-filing discovery, their attempts to resolve the case extrajudicially, and the guidance offered by Magistrate Judge Wehrman. Tressa filed its brief almost a month after AIL's brief and did not contradict the factual account in AIL's affidavit.

On May 15, 2001, the district court held that Tressa breached the Agreement by failing to pay AIL royalties on Colourage sales and by using and altering AIL's formulas in an attempt to circumvent the Agreement. In addition, the district court held that AIL's claim for misappropriation of trade secrets with regard to the eight new shades was barred as untimely, but that the statute of limitations was equitably tolled with regard to the reformulated shades and that Tressa was continuing to misappropriate AIL's trade secret formulas by substantially using and benefitting from them without authorization from

---

**3.** Ultimately, Tressa claimed to have reformulated the vast majority of its shades and from February 1995 until February 1999, Tressa paid royalties on the net sales of the remaining shades that it agreed had not been reformulated. After February 1999, Tressa stopped paying royalties even on the shades that were not in dispute.

AIL. Ultimately the court awarded AIL damages arising out of Tressa's breach of contract in the amount of unpaid royalties at 1.68% of the net annual sales for the eight new shades, and 1.68% unpaid royalties on the reformulated shades on the basis of the misappropriation of trade secrets claim. AIL's claims with respect to Tressa's Facets and Irresistible lines were dismissed by the district court at the conclusion of AIL's evidence.

## II

### Contract Claim

■ Tressa first argues that AIL's claim for breach of contract in this case must fail since Kentucky law mandates that a party who has breached a material provision in a contract cannot sue to enforce that same contract. AIL contends that Tressa waived this argument because it failed to raise this defense at trial. However, Tressa made the following statement to the district court, effectively presenting this defense, at the close of AIL's case, when it moved to have AIL's claims dismissed:

> The Court has already ruled that AIL breached the contract. It has awarded Tressa damages under that contract. AIL is the breaching party here. It cannot now try to enforce the contract. The relationship between these parties has terminated long ago. long before the first litigation was even concluded. There is no contract left. The Court did not modify the contract. It entered judgment against AIL on the breach of contract claim. The contract claim fails as a matter of law and should be dismissed.

Tressa's argument, which we hold to have been raised at trial, has merit. Kentucky law requires that AIL's undisputed initial material breach of the Agreement in this case, although done in good faith, be considered in determining the ultimate status of the contract. *See West Kentucky Coal v. Nourse,* 320 S.W.2d 311 (Ky.1959) (holding that an option to convey land was not enforceable against the defendant since, among other things, the plaintiff had not fulfilled its reciprocal obligation to provide the defendant with information regarding preliminary mineral findings); *Webb v. Welcome Wagon, Inc.,* 255 S.W.2d 459, 461 (Ky.1953) (holding in the case of a dispute between a company and an employee with regard to a noncompete clause in their contract that if the company "had breached a material provision of the contract, the company cannot enforce by injunction the employee's covenant not to engage in a competing business."). Furthermore, while this rule has generally been applied where the relief sought was one of equity in the nature of specific performance, the Kentucky courts have stated that "even at law (as distinguished from equity) a party who commits the first breach of a contract is deprived of the right to complain of a subsequent breach by the other party." *Nourse,* 320 S.W.2d at 315 (citing *Williamson,* 49 S.W.2d at 1006).

In fact, in *Daniel v. Ohio Casualty Insurance Co.,* No. 90–5806, 1991 WL 93118, at *4 (6th Cir. June 4, 1991), we addressed a similar argument from a party who contended that *Nourse* stood for the proposition that "Kentucky courts will not enforce options to purchase [land] where the person seeking to enforce the option has not complied with all of the provisions of the agreement." Although the panel in *Daniel* held that the proposition relied upon was not wholly dispositive, it agreed that a first breach is a factor to be considered. *Ibid.*

Finally, when one views the situation as a whole, it is apparent that the Agreement was effectively rescinded by the prior liti-

gation and has not been adhered to since then. Even though the district court did not explicitly state that the Agreement was terminated, the damages awarded were calculated so as to place the parties in the same position they would have been in had the contract never existed and all prospective damages awarded by the court were calculated pursuant to the Kentucky Trade Secrets Act, with neither party performing according to the terms of the contract since. For these reasons, we hold that the contract was rescinded and that AIL's claim for breach cannot stand. As a result, Tressa's defenses of *res judicata* and collateral estoppel are rendered moot.

### Misappropriation of Trade Secrets

■ Rather than being a contract dispute, this case constitutes the continuing misappropriation by Tressa of a trade secret obtained from AIL as part of the Licencing Agreement and thus, according to the Act, should be considered one single claim. Furthermore, since AIL filed its original complaint within the statute of limitations in the prior litigation and all future use of the protected Information should have been seen in the context of enforcing that original judgment, AIL's claim is not barred by the statute of limitations. The district court should not have closed the prior litigation and should instead have joined any further acts of misappropriation stemming from the original Information gained by way of the agreement to the prior litigation, as originally proposed by AIL. As a result, the ultimate award of damages granted by the district court remains valid under the Act, instead of under the contract claim.

It is worth pointing out initially that there is no dispute over the fact that AIL's Information constitutes a trade secret pursuant to the Act and, as the district court held. Tressa has "substantially used and benefitted from AIL's formulas without authorization from AIL" in its development of the eight new shades and the reformulated shades, "both of which were substantially derived from AIL's original formulas." As a result, Tressa's actions constitute a misappropriation of trade secrets under the Act. What is disputed is the application of the statute of limitations in this case.

The owner of a trade secret is traditionally protected by law against the appropriation of that secret by improper means and the subsequent use or disclosure of the improperly acquired secret. However, there has historically been a split in authority on the question of whether trade secret misappropriation should be considered a continuing tort, or as a single tort arising only at the time of the initial misappropriation, for purposes of the statute of limitation. *Compare Underwater Storage, Inc., v. United States Rubber Company,* 371 F.2d 950, 953–55 (D.C.Cir.1966) (holding that the misappropriation and continuing use of a trade secret constitutes a continuing tort and rejecting the approach taken by others that the tort of misappropriation "lies in the wrongful acquisition" of the trade secret) *with Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288, 292–293 (9th Cir.1969) (explicitly rejecting the continuing tort approach and holding that the plaintiff's cause of action fully matured for purposes of the statute of limitations when the defendant "first made adverse use or disclosure of the trade secret in violation of its confidential relationship."). These different approaches are grounded in two competing views on the theoretical basis for legal protection of trade secrets: the "property" view and the "confidential relationship" view. Under the property view, each unauthorized use of a trade secret by the misappropriator is a separate claim, representing the continuing tort of

misappropriating the intellectual property of another, and the statute of limitations runs on each new act of misuse anew. Under the confidential relationship view, the first discovered (or discoverable) misappropriation of a trade secret commences the limitation period, placing the focus instead on the breach of the relationship between the parties at the time the secret is disclosed.

In 1979, the National Conference of Commissioners on Uniform State Laws approved of the Uniform Trade Secrets Act (the Uniform Act), which rejected the continuing tort approach. In 1990, the Uniform Act was adopted without significant change by Kentucky and we apply it here. Section 365.890 of Kentucky's Uniform Trade Secrets Act, which repeats verbatim Section 6 of the Uniform Act, provides that "[a]n action for misappropriation must be brought within three (3) years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. *For the purposes of this section, a continuing misappropriation constitutes a single claim.*" (emphasis added). In the comments to this section of the Uniform Act, the Commissioners state in relevant part:

> This Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation. If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights.

Unif. Trade Secrets Act, com. to § 6, p. 462.

Section 365.894 of the Act states that the Act "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [the Act] among states enacting it." It is therefore appropriate to accord substantial weight to the Commissioners' comments on this section, and to turn to decisions in other jurisdictions for guidance in interpreting and applying the Uniform Act. This is especially true since no Kentucky court has published a decision interpreting or applying the Act, whereas other jurisdictions have considered the particular section at issue in this case in some detail.

The unanimous conclusion of courts considering this issue has been that a *claim* for misappropriation arises only once for statute of limitation purposes—at the time of the initial misappropriation, subject to the discovery rule provided for in the text of section 6 of the Uniform Act or section 365.890 of Kentucky's version. *See, e.g., Cadence Design Sys., Inc., v. Avant! Corp.,* 29 Cal.4th 215, 127 Cal.Rptr.2d 169, 57 P.3d 647, 651–52 (Cal.2002) (addressing a certified question from the Ninth Circuit Court of Appeals with regard to the section of the California Uniform Trade Secrets Act that is equivalent to Section 6 of the Uniform Act, and holding that the continued improper use of a trade secret after the defendant's initial misappropriation is part of a single claim, which accrues at the time of the initial misappropriation for statute of limitation purposes). *See also Read & Lundy, Inc., v. The Washington Trust Co. of Westerly,* No. PC99–2859, 2002 WL 31867868, at *8–*9 (R.I.Super. Dec. 13, 2002) (holding that the initial misappropriation or disclosure for statute of limitation purposes occurred when the plaintiff first had knowledge of the defendant's misuse of the confidential information at stake in the case, and a later act of misappropriation of that same information did not constitute a separate cause of action under the Uniform Act); *McLeod v. Northwest Alloys, Inc.,* 90 Wash.App. 30, 969 P.2d 1066, 1070 (1998) (holding that

the period of limitation established under the Uniform Act as adopted by the state of Washington was triggered by the unauthorized disclosure of the trade secret at issue in the case and that a new period of limitation was not "triggered when [the defendants] actually implemented or 'used' the trade secret in its operation."); *McCaffree Fin. Corp. v. Nunnink,* 18 Kan.App.2d 40, 847 P.2d 1321, 1328–29 (Kan.Ct.App.1993) (holding that the limitation period for a cause of action under the Kansas Uniform Trade Secrets Act, which replicates section 6 of the Uniform Act, begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the misappropriation of the trade secret at issue).

The California Supreme Court in *Cadence,* 127 Cal.Rptr.2d 169, 57 P.3d at 651–52, carefully reasoned through the intended purpose of section 6 of the Uniform Act, clearly distinguishing between an act of "misappropriation" and a "claim" within the meaning of the Uniform Act. *Id.* at 651. On the one hand, an act of misappropriation occurs "not only at the time of the initial acquisition of the trade secret by wrongful means, but also with each misuse or wrongful disclosure of the secret." *Ibid.* Whereas a *claim* for misappropriation "arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation, subject to the discovery rule ... [and e]ach new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim." *Ibid.*

In our case, there is no question that if Tressa's acts of misappropriation resulting in the eight new shades and the reformulated shades were to be considered separate claims under the Act, AIL's complaint would be barred by the statute of limitations, since AIL became aware of the eight

new shades at least as early as September 1993, and the reformulated shades at least as early as July 1995, and although AIL filed a motion to enforce the judgment on October 16, 1997, AIL did not file a complaint in the present litigation until February 1999, well after the three-year limitations period.

Nevertheless, according to the Act, the only relevant event for purposes of determining when AIL's cause of action accrued is the initial act of misappropriation, which occurred when Tressa misappropriated AIL's trade secrets in its development of the Colourage line. Each misappropriation of that same Information obtained from AIL as part of the original Licensing Agreement constitutes another misuse, but not another claim for purposes of the statute of limitations. Therefore, had AIL filed a new complaint with regard to the reformulated shades after having discovered that they had been developed in 1995 from AIL's Information, in the absence of the prior litigation, the courts would have been compelled to dismiss AIL's complaint as barred by the statute of limitations since the initial act of misappropriation by Tressa occurred and was readily discoverable in 1990, when Tressa developed the Colourage line from AIL's Information. However, because AIL filed its original complaint within three years of the initial act of misappropriation, and properly sought relief for these new acts of misappropriation by seeking to enforce the prior litigation's final judgment, its claim here is saved.

We further note that an alternative holding by us would produce a result that is both illogical and inconsistent with the statutory scheme of the Act. If we were to hold that the lower court properly required AIL to initiate a new law suit in order to deal with these new acts of misappropriation, we would effectively bar plain-

tiffs from bringing claims for new acts of misappropriations that occur three years after the discovery of the initial misuse by a defendant, in cases in which the plaintiff has been diligent in pursuing its rights under the Act. In other words, if we take the initial act of misappropriation by Tressa as the triggering event, but hold that this claim is properly new, it is barred by the statute of limitations. This cannot be the right result.

We conclude, therefore, that the district court in this case should not have closed the prior litigation, and the case before us now should be seen as part of that claim, which was in fact filed well within the limitations period set by the Act. We hold on this basis that the statute of limitations does not bar AIL's claim. To rule otherwise would be inconsistent with the statutory scheme, as it would undermine the Act's principle of not splitting a cause of action, would condone the "continuing wrong" approach, which has been repudiated by the Act, and would allow tortfeasors to commit new acts of misappropriation with impunity when done more than three years after initially misappropriating a trade secret. In construing a statute, we "must consider 'the intended purpose of the statute—the reason and spirit of the statute—and the mischief intended to be remedied.'" *Commonwealth v. Kash*, 967 S.W.2d 37, 43–44 (Ky.Ct.App.1997) (quoting *City of Louisville v. Helman*, 253 S.W.2d 598, 600 (Ky.1952)).

Moreover, this holding is entirely in keeping with the purpose of statutes of limitations, which are statutes of repose that preclude the presentation of stale claims and encourage diligence on the part of those whose rights have been infringed upon. In furthering these objectives, such statutes serve a worthy purpose. In this case AIL's claim is neither stale nor has AIL been anything less than diligent in pursuing its claim. It is only by virtue of a procedural twist initiated by the district court that AIL here presented a "new" claim, rather than a motion to enforce the prior litigation's final judgment.

### III

For the reasons given above, we AFFIRM the district court's award of damages to AIL on the basis of Kentucky's Uniform Trade Secrets Act.