RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALLIED ERECTING AND DISMANTLING CO., INC.;
ALLIED-GATOR, INC.,

                    *Plaintiffs-Appellants*,

      *v.*

GENESIS EQUIPMENT & MANUFACTURING, INC.,

                    *Defendant*,

GENESIS ATTACHMENTS, LLC; INTERNATIONAL
EQUIPMENT SOLUTIONS, LLC,

                    *Defendants-Appellees*.

No. 14-3563

_____

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:13-cv-01716—Benita Y. Pearson, District Judge.

Argued: January 15, 2015

Decided and Filed: November 3, 2015

Before: NORRIS, ROGERS, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Christopher R. Opalinski, ECKERT SEAMANS CHERIN & MELLOTT, Pittsburgh, Pennsylvania, for Appellants. Eric J. Magnuson, ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Minneapolis, Minnesota, for Appellees. **ON BRIEF:** Christopher R. Opalinski, F. Timothy Grieco, Audrey K. Kwak, ECKERT SEAMANS CHERIN & MELLOTT, Pittsburgh, Pennsylvania, for Appellants. Eric J. Magnuson, Thomas C. Mahlum, Katherine S. Barrett Wiik, ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Minneapolis, Minnesota, for Appellees.

      NORRIS, J., delivered the opinion of the court in which ROGERS and WHITE, JJ., joined. WHITE, J. (pg. 12), delivered a separate concurring opinion.

—————————

**OPINION**

—————————

ALAN E. NORRIS, Circuit Judge. Plaintiffs Allied Erecting and Dismantling Co., Inc. and Allied-Gator, Inc. (together, "Allied") appeal the district court's Federal Rule 12(b)(6) dismissal of their Ohio Uniform Trade Secrets Act ("OUTSA") lawsuit based on diversity of citizenship jurisdiction against Genesis Attachments, LLC and its parent company, International Equipment Solutions, LLC (together, "Genesis"). For the reasons that follow, the judgment of the district court is **affirmed**.

**I.**

Allied was founded as a family-owned business in 1973 by John Ramun. Allied and Genesis compete in the field of industrial dismantling and scrap processing, including the design, development, and manufacture of related specialized equipment. From May 1992 through June 2001, John's son Mark worked in various positions at Allied, including as a manager. By 1999, Allied developed an innovative series of multiuse demolition machine attachments called the Allied MT. A variety of sizes and types of jawsets, including a steel beam cutter and a concrete crusher, were available for the Allied MT allowing the operator to perform different tasks with just the one tool. At its introduction, this product was novel because the jawset could be changed without removing the main pin, saving time and enhancing productivity.

Mark Ramun was responsible for presenting the Allied MT technology to possible investors, although Allied eventually obtained sufficient capital to produce the attachment on its own. Because Mark's presentations contained detailed information regarding the design and function of the attachment, they were highly confidential.

Mark and John's relationship was a tense one, and in 2001 Mark left his employment with Allied. Mark took with him a laptop containing approximately 15,000 pages of Allied documents, including detailed technical information about the Allied MT. After working for a New Zealand-based attachments company, Mark joined Genesis in 2003. He was quickly promoted to director of development and demolition services at Genesis. Sometime thereafter,

Genesis released its own multiuse tool, the LXP and later, the Versi Pro.  The similarity of these tools to the Allied MT is the crux of Allied's trade secrets claims against Genesis.

**II.**

In 2010, a jury rendered a verdict in favor of Allied based on the misappropriation of the Allied MT trade secrets by Genesis and Mark Ramun.  The lawsuit before us was filed in 2013 and alleges continued misappropriation by Genesis since the 2010 verdict.  Before delving into the procedural history and analysis, we review Ohio law on trade secrets.

### A.     *OUTSA Trade Secret Protection*

The protection of trade secrets largely was a common law concept until the Uniform Trade Secrets Act ("UTSA") was promulgated by the National Conference of Commissioners on Uniform State Laws, and recommended for adoption in all states.  Ohio adopted the UTSA in 1994 with only minor changes.[1]  The OUTSA expressly provides that it "shall be applied and construed to . . . make uniform the law with respect to their subject among states enacting them." Ohio Rev. Code Ann. § 1333.68.

The OUTSA provides that "trade secrets" include "scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement" provided the secret has "independent economic value, actual or potential," derived from the fact that it is not known or easily discoverable by others.  Ohio Rev. Code Ann. § 1333.61(D).  Third party discovery through "proper means," including through observation of the item or acquiring and reverse engineering a product, destroys a trade secret. UTSA § 1 cmt. However, "Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" is defined as a "misappropriation" of the trade secret.  Ohio Rev. Code Ann. § 1333.61(B)(1).  Improper means "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Ohio Rev. Code Ann. § 1333.61(A).

---

[1]For example, Ohio adopted a four-year statute of limitations, while the model act provides for a three-year limitations period.  *Compare* Ohio Rev. Code § 1333.66 *with* Uniform Trade Secrets Act § 6.

B.      *OUTSA Statute of Limitations*

The OUTSA contains a four-year statute of limitations which begins to run when "the misappropriation [of the trade secret] is discovered or by the exercise of reasonable diligence should have been discovered." Ohio Rev. Code. Ann. § 1333.66. Before the UTSA, courts split on how to apply a statute of limitations in trade secrets claims, with some courts applying a "continuing wrong" approach, and others a "single claim" approach. The UTSA "rejects a continuing wrong approach to the statute of limitations . . . . If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights." UTSA § 6 cmt.; *see also* Ohio Rev Code Ann. § 1333.66 ("For the purposes of this section, a continuing misappropriation constitutes a single claim.").

To better understand the "single claim" approach, it is instructive to contrast it with copyright and patent protections, which apply a "continuing wrong" approach, also known as a "separate-accrual" rule, to infringement suits.

> A claim ordinarily accrues when a plaintiff has a complete and present cause of action. In other words, the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief. A copyright claim thus arises or accrues when an infringing act occurs.
>
> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete claim that accrues at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) (citations omitted); *see also* 17 U.S.C. § 507 ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). Patent law operates in a similar fashion, with a six-year limitations period. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 2031 (Fed Cir. 1992) (en banc) (noting "each act of [patent] infringement is deemed a separate claim"); 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").

Trade secret law is different, and states that have adopted the UTSA consistently apply a single claim theory to misappropriations of trade secrets. *See, e.g., Adcor Indus., Inc. v. Bevcorp, LLC*, 252 F. App'x 55, 62 (6th Cir. 2007) (noting that "the Ohio statute clearly forecloses [a multiple misappropriation] argument"); *Cadence Design Sys., Inc. v. AvantA Corp.*, 57 P.3d 647, 651 (Cal. 2002) ("[A] claim for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation, subject to the discovery rule . . . ."); *Manturuk v. Gen. Motors Corp.*, No. 211722, 2000 WL 33416876, at *5 (Mich. Ct. App. July 14, 2000) (per curium) ("[T]he misappropriation of trade secrets is not a continuing offense. The wrong occurs at the time of the improper acquisition.") (citations and quotations omitted).

### C.     OUTSA Remedies

It is important to note the variety of remedies that may be available to a successful trade secret misappropriation plaintiff before turning to the details of the dispute between Allied and Genesis.

First, "Actual or threatened misappropriation may be enjoined. . . . [A]n injunction shall be terminated when the trade secret has ceased to exist, [except] the injunction shall be continued for a reasonable time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation." UTSA § 2; Ohio Rev. Code Ann. § 1333.62. "[A]n injunction should last for as long as is necessary, but no longer than is necessary, to eliminate the commercial advantage or 'lead time' with respect to good faith competitors that a person has obtained through misappropriation . . . ." UTSA § 2 cmt. "It would be anti-competitive to continue to restrain [a misappropriator of a trade secret] after any lead time . . . derived from misappropriation had been removed." *Id.* Injunctive relief is not designed to be punitive, but rather "to place the injured party in the position that he would have been in had the misappropriation not taken place." *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 492 N.E.2d 814, 820 (Ohio 1986); *see also* 88 Ohio Jur. 3d Trade Secrets § 25.

Second, as to monetary damages:

[A] complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust

enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding three times[2] any award made [above].

Ohio Rev. Code Ann. § 1333.63.   The UTSA commentary notes that "recovery of *both* a complainant's actual losses and a misappropriator's unjust benefit that are caused by misappropriation" is permitted provided there is no double counting.  UTSA § 3 cmt. (emphasis added); *see also MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 781-82 (N.D. Ohio 2013) ("Ohio law treats actual loss and unjust enrichment caused by misappropriation as two distinct theories of recovery.").  Where damages are otherwise difficult to measure, "the value of the secret" to the misappropriating party can "be a proper yardstick for a damage award."  *MAR Oil Co.*, 973 F. Supp. 2d at 782.

**III.**

Allied sued Genesis in 2006 seeking damages for violation of the OUTSA and the Lanham Act, as well as other state-law claims.  The district court granted summary judgment in favor of Genesis as to Allied's Lanham Act claim and the rest of its state-law claims, but allowed the OUTSA claim to proceed to trial.  *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 710 (N.D. Ohio 2009).  The jury found Genesis and Mark Ramun jointly and severally liable for misappropriation of Allied's trade secrets and awarded $3,046,800 in damages based on unjust enrichment.  The jury did not award damages for Allied's lost profits, nor punitive damages against Genesis.

Allied filed a post-trial motion seeking a permanent injunction against Genesis to prevent future use of the trade secrets or, in the alternative, seeking royalties on the sale of any Genesis products derived from the misappropriated secrets.  The district court denied the motion, noting that Allied failed to establish that an injunction was necessary and was unable to demonstrate

---

[2]The UTSA provides a cap on exemplary damages at two times ordinary damages, UTSA § 3, but the OUTSA adopts a cap of three times ordinary damages.  Ohio Rev. Code Ann. § 1333.63.

that the jury's unjust enrichment award did not fully compensate Allied.  *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:06CV114, 2010 WL 3370286, at *3 (N.D. Ohio Aug. 26, 2010) *aff'd*, 511 F. App'x 398 (6th Cir. 2013).

Genesis filed its own post-trial motion seeking judgment as a matter of law with respect to damages, which the district court granted.  According to the court, Allied had failed to present sufficient evidence to support the jury's award.  *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:06CV114, 2010 WL 4818367, at *7 (N.D. Ohio Nov. 19, 2010) ("Because the Court finds that Plaintiffs failed to present any evidence upon which the jury could reasonably have found the existence or amount of unjust enrichment damages, Defendants are entitled to judgment as a matter of law with respect to unjust enrichment damages.").  Allied appealed the denial of its motion and the grant of the Genesis motion.

On appeal, this court reinstated the jury's unjust enrichment damages against Genesis, but also affirmed the district court's refusal to grant Allied an injunction or any royalties going forward.  *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 399 (6th Cir. 2013).

After this court reinstated the award of damages, Allied filed a motion for supplemental relief with the district court, insisting that it is entitled to ongoing damages or royalties for continued use of its trade secrets.  Allied argued that even after the jury verdict, Genesis wrongfully persisted in its misconduct and continued to enrich itself through the use of the misappropriated trade secrets in its products.  The district court denied Allied's motion, noting that Allied raised no new claims, but instead sought the same previously denied prospective relief, for the same claim.  The district court suggested that if Allied had claims based on any *new* violations, it should bring a separate action.

In response to the district court's suggestion, in August 2013 Allied brought the instant action against Genesis and its parent company International Equipment Solutions, LLC ("IES").  The complaint alleges that Genesis continues to sell equipment that is based on technology Genesis learned from the misappropriated Allied MT trade secrets.  Allied claims that Genesis has expanded its misappropriation by adding at least two new sizes of the attachments, expanding its dealer networks and manufacturing facilities for the products, and disclosing

Allied's trade secrets in marketing materials. Allied maintains that Genesis was unjustly enriched by these new and expanded uses of its technology. Against IES, Allied alleges that IES purchased Genesis in 2011 knowing Genesis was engaged in improper use and disclosure of Allied's trade secrets and therefore improperly profited from the misappropriation by Genesis.

Genesis filed a motion to dismiss claiming that the suit was barred both by the four-year statute of limitations and by the doctrine of claim preclusion. The district court held that the use of Allied's trade secrets by Genesis constituted a continuing misappropriation that related back to a single claim: the wrongful acquisition of the Allied MT secrets in 2003, discovered by Allied in 2005. Therefore, the district court reasoned, Allied's 2013 lawsuit was time-barred. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, No. 4:13CV1716, 2014 WL 2442221, at *5 (N.D. Ohio May 30, 2014). The district court did not address the issue of claim preclusion. *Id.*

## IV.

"We review de novo a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), construing the complaint in the light most favorable to the plaintiffs, accepting their well-pleaded factual allegations as true, and drawing all reasonable inferences in their favor." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015) (citing *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc)).

Allied argues that the district court erred, and the case at hand is based on misappropriation acts by Genesis commencing after the July 2010 jury verdict in the original misappropriation suit. If the claim accrued July 2010 or later, it follows that an August 2013 filing is within the OUTSA's four-year statute of limitations. Allied concedes that what it calls the post-verdict acts of misappropriation by Genesis stem from the same Allied MT trade secrets that were misappropriated by Genesis in 2003. Although Allied successfully sued Genesis based on that misappropriation, Allied argues that the jury verdict effectively ended that misappropriation claim. Because Genesis continuously made use of the previously misappropriated information, Allied argues, use by Genesis following the verdict triggered a new claim, and started the running of a new statute of limitations. Allied is mistaken. Such an interpretation would eviscerate the single claim approach codified in the UTSA and the OUTSA.

Under the single claim approach, all of the wrong done by Genesis to Allied happened in 2003 when Genesis improperly acquired the Allied MT trade secrets. Allied claims that it learned of the misappropriation in late 2005, which triggered the running of the OUTSA statute of limitations period. Allied sued in 2006, well within the four-year statute of limitations period. Once Allied convinced the jury that Genesis misappropriated trade secrets in 2003, the claim was proven and the only thing left to do was to determine the appropriate remedy.

As described in Section II.C, *supra*, there were myriad possible remedies to put Allied and Genesis in the position each would have been in but for the misappropriation. The jury considered and expressly rejected Allied's claim that they lost customers to Genesis as a result of the misappropriation; therefore, the jury declined to award any damages for lost profits. The jury also declined to award punitive damages. However, the jury did find that Genesis was unjustly enriched by its misappropriation. The jury was instructed to consider the improper financial enrichment of the defendant as (1) what a reasonably prudent investor would pay for the trade secrets, (2) savings to Genesis because of increased productivity, or (3) savings in research costs. The jury awarded $3,046,800 in unjust enrichment damages. As described above, the district court refused any prospective remedy—injunction or royalties—and this court affirmed that decision in *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 399 (6th Cir. 2013). That should have ended the litigation surrounding the trade secrets misappropriated in 2003.

Allied argues, pointing to this court's non-precedential decision in *Amalgamated Industries Ltd v. Tressa, Inc.*, 69 F. App'x 255 (6th Cir. 2003), that because it has consistently and diligently pursued its claims Allied should not be denied a remedy for the continuing violation by Genesis. However, *Amalgamated* is inapposite here. The plaintiff in *Amalgamated* sued for misappropriation of trade secrets related to hair color shade formulas. *Id.* at 257. The plaintiff prevailed, and as part of the trade secrets judgment was awarded a *prospective* licensing fee: 1.68% of the revenue derived from any product incorporating the secret formula. *Id.* The plaintiff successfully reopened the litigation after the limitations period and was awarded additional damages because the defendant had expanded its product line to include other shades based on the same secret formula, without paying the licensing fee. *Id.* at 258.

In *Amalgamated* the suit was, at its core, about enforcing the prior judgment and awarded relief. Here, Allied's request for prospective injunctive relief or royalties was flatly denied by the district court, and that denial was affirmed by this court. There is no prospective relief from the prior litigation for Allied to enforce against the continued sale by Genesis of its products that Allied claims are based on the Allied MT trade secrets.

Genesis filed its motion to dismiss, citing both the statute of limitations and claim preclusion as grounds for dismissal. The question remains whether the district court was correct in determining that the instant action was barred by the statute of limitations rather than by claim preclusion. If Allied had alleged that Genesis was making use of new or different secrets or technology misappropriated in 2003, then the statute of limitations likely would be the correct ground for dismissal. However, because Allied is claiming only that Genesis continues to make use of the same misappropriated secrets that were exhaustively litigated in the prior suit, in our view claim preclusion is the more appropriate ground.

> As this case involves successive diversity actions, federal res judicata principles apply. *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L.Ed. 2d 103 (1981) (emphasis added). We use a four-part test for determining whether a subsequent action is barred by the doctrine of res judicata, or to be more precise in this circumstance, claim preclusion. "[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).

*Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (footnotes omitted). The instant claim against Genesis satisfies each of the elements of res judicata.

Though we rely on different grounds for the dismissal, the district court's judgment need not be disturbed. We may affirm the district court judgment on any grounds supported by the record. *See Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013).

With respect to Allied's claim against IES, the parent of Genesis, we agree with the district court's judgment but again question whether the passage of the limitations period is the

correct justification. For instance, there have been rare cases when later misappropriation by a third party investor may constitute a new claim. *See, e.g.*, *PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663, 675 (Cal. Ct. App. 2000) (finding misappropriation when investors "invested at a bargain price in a corporation whose sole business assets consisted of stolen confidential information and processes"). This is not such a case. Finding liability under the OUTSA requires *misappropriation* of a trade secret—acquisition by improper means, disclosure, or use— and Allied does not allege that IES has engaged in any of these acts directly. Assuming for the sake of argument IES indirectly acquired the Allied MT technology from Genesis when it purchased Genesis in 2011, this acquisition was after the conclusion of the prior litigation. Especially in the absence of any injunction preventing Genesis from disclosing the trade secret, such an incidental acquisition of information by a company that does not even operate in the same industry cannot satisfy the requirement that IES acquired Allied's trade secrets by "improper" means. Allied's arguments seem to suggest a theory of vicarious liability or piercing the corporate veil to reach IES, but its arguments are not persuasive. Though this claim may not be neatly resolved based on the statute of limitations, it is clear that Allied's complaint against IES fails to advance a claim for which relief may be granted, and so the district court's judgment dismissing the suit under rule 12(b)(6) was proper.

## V.

The judgment of the district court is **affirmed**.

_____

**CONCURRENCE**

_____

HELENE N. WHITE, Circuit Judge, concurring. I agree that the prior judgment bars the instant litigation. As noted, the prior action resulted in the award of $3,046,800 in unjust-enrichment damages, defined as including "(1) what a reasonably prudent investor would pay for the trade secrets." This unjust-enrichment award compensated Allied fully for the misappropriated trade secrets. Genesis effectively paid for what it had misappropriated, and Genesis/IES' later use of the same trade secrets in the next generation of its product does not entitle Allied to additional damages.