NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSEF MAATUK,**
*Plaintiff-Appellant*

**v.**

**EMERSON ELECTRIC, INC., BERND ZIMMERMAN, PRASAD KHADKIKAR, DOES 1-10, INCLUSIVE,**
*Defendants*

**THERM-O-DISC,**
*Defendant-Appellee*

---

2019-1615

---

Appeal from the United States District Court for the Northern District of Ohio in No. 1:16-cv-03023-TMP, Magistrate Judge Thomas M. Parker.

---

Decided: August 14, 2019

---

JOSEF MAATUK, Los Angeles, CA, pro se.

DAVID UTYKANSKI, Harness, Dickey & Pierce, PLC, Troy, MI, for defendant-appellee.

---

Before PROST, *Chief Judge,* PLAGER and HUGHES, *Circuit Judges.*

PER CURIAM.

This case involves a business relationship in fluid sensor technology that ended in 1999. Pro se appellant, Dr. Josef Maatuk, appeals two decisions from the United States District Court for the Northern District of Ohio granting summary judgment to Therm-O-Disc. *Maatuk v. Emerson Elec. (Maatuk I),* No. 1:16-CV-03023, 2017 WL 9485679 (N.D. Ohio Nov. 14, 2017) (R. & R. *adopted by* 2018 WL 562934); *Maatuk v. Emerson Elec., Inc. (Maatuk II),* No. 1:16-CV-03023, 2019 WL 425605 (N.D. Ohio Feb. 4, 2019). Dr. Maatuk claims that Therm-O-Disc breached a confidential disclosure agreement in 1999 and is liable for trade secret misappropriation and unjust enrichment. He claims that he is entitled to be listed as a joint inventor on U.S. Patent No. 7,775,105. Because Dr. Maatuk previously litigated and lost his trade secret misappropriation claim and failed to provide evidence that he made more than an insignificant contribution to the conception of the '105 patent, we affirm.

I

In 1997, Dr. Maatuk entered into a confidential disclosure agreement with Therm-O-Disc (TOD) to allow TOD to evaluate Dr. Maatuk's multi-functional liquid sensor technology for a potential licensing agreement. The agreement included a provision stating that it would be construed according to Ohio law. Between 1997 and 1999, Dr. Maatuk corresponded with Prasad Khadkikar and Bernd Zimmermann, TOD employees, and provided TOD with a sample probe, prototypes, and other information for constructing his sensor. Dr. Maatuk never discussed turbidity sensors with any of TOD's employees.

In mid-1999, TOD informed Dr. Maatuk that it would not license his liquid sensor technology. The parties broke

off their relationship, and Dr. Maatuk threatened to sue TOD for breaching the confidential disclosure agreement and infringing his U.S. patents.

TOD filed a complaint for declaratory judgment in the U.S. District Court for the Northern District of Ohio, seeking judgment that it did not breach the confidential disclosure agreement or infringe Dr. Maatuk's patents. On August 28, 2000, Dr. Maatuk subsequently sued TOD in the U.S. District Court for the Central District of California, asserting breach of the confidential disclosure agreement, trade secret misappropriation, fraud, and negligence. Dr. Maatuk's suit was transferred to the Northern District of Ohio, which consolidated it with the declaratory judgment suit. The Northern District of Ohio ultimately ruled in favor of TOD. Dr. Maatuk appealed to this court, and we affirmed on August 1, 2003. *Therm-O-Disc, Inc. v. Maatuk*, 73 F. App'x 391, 392 (Fed. Cir. 2003).

On December 10, 2003, Mr. Khadkikar and Mr. Zimmermann conceived the idea for a multi-functioned sensor that combined a turbidity sensor with a fluid level sensor. On April 21, 2004, they filed a provisional patent application for their invention, which eventually issued as U.S. Patent No. 7,775,105. The '105 patent "incorporates a combination of more than one of a fluid level sensing component or a fluid flow rate sensing component, a turbidity sensing component, a temperature sensing component and a pressure sensing component." '105 patent col. 1 ll. 59–63. Each claim requires a turbidity sensor and at least one other fluid sensor.

On August 17, 2016, Dr. Maatuk sued TOD and other parties in the Central District of California, asserting correction of inventorship for the '105 patent, misappropriation of trade secrets, and unjust enrichment. On December 15, 2016, the case was transferred to the Northern District of Ohio. After transfer, the district court granted the

motion in part, finding the claims time-barred under the Ohio Uniform Trade Secrets Act.

The parties conducted fact and expert discovery with regards to Maatuk's correction of inventorship claim. At the close of discovery, TOD moved for summary judgment. The court granted the motion, explaining that Dr. Maatuk did not produce "any evidence that he worked with Khadkikar and Zimmermann to arrive at a definite and permanent idea of a multi-function sensor that integrated a turbidity sensor with other sensor modules." *Maatuk II*, 2019 WL 425605, at \*9. Because the "invention described in the '105 patent is the *integration* of a turbidity sensor with . . . other sensors into a single multi-function sensor device," Dr. Maatuk's inability to show any collaboration or work on turbidity sensors precluded finding him a joint inventor. *Id.* The court also found that Dr. Maatuk's alleged contributions did not constitute a contribution to the conception of the '105 patent.

Dr. Maatuk appeals the grant of both summary judgment motions. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

"We review a district court's grant of summary judgment *de novo*." *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1302 (Fed. Cir. 1997). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997).

### A.

We first address the district court's determination that Dr. Maatuk's trade secrets and unjust enrichment claims were time-barred.

"We apply the trade secret law of the appropriate state," in this case, Ohio, as was stipulated in the confidential disclosure agreement. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009). "An action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Ohio Rev. Code § 1333.66; *see also* Ohio Rev. Code § 1333.63 (making unjust enrichment a statutory remedy for misappropriation). Under Ohio's "single claim" approach, the limitations period begins to run once the wronged party becomes aware of a breach of a confidential relationship. *See Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 583 (6th Cir. 2015). Subsequent breaches do not create a new cause of action because "it is the relationship between the parties at the time the secret is disclosed that is protected, and that the fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated." *Id.* (cleaned up).

We agree that Dr. Maatuk's trade secret misappropriation claim is time-barred. As the district court explained, "[u]nder Sixth Circuit precedent, Maatuk's trade secret misappropriation claim accrued at the latest when he instructed his attorney to send [a] cease and desist letter to TOD and then filed [his first lawsuit]" on August 28, 2000, because it shows he was cognizant of a breach in the confidential disclosure agreement. *Maatuk I*, 2017 WL 9485679, at *7. His claims having accrued in 2000, at the latest, his August 17, 2016, suit falls well outside the four-year statutory period provided by Ohio law.

Dr. Maatuk argues that his claims should be preserved under *Amalgamated Indus. Ltd. v. Tressa, Inc.*, 69 F. App'x 255 (6th Cir. 2003). He contends that, under *Amalgamated*, a party bringing a trade secrets claim may backdate

the claim for subsequent discoveries of misappropriation. We reject this characterization.

*Amalgamated* was the second case stemming from the misappropriation of trade secrets related to hair color shade formulas. *Id.* at 257. The plaintiff prevailed in its initial litigation, and the court awarded it a prospective licensing fee based on the revenue derived from any product incorporating the secret formula. After the statute of limitations had passed, the plaintiff discovered that the defendant had expanded its product line to include additional shades incorporating the misappropriated secret formula. *Id.* at 258. The Sixth Circuit held that the plaintiff was not time-barred from relief. *Id.* at 263.

*Amalgamated* did not find that a plaintiff can use an earlier trade secrets misappropriation claim to toll the statute of limitations for a subsequent misappropriation claim arising from the same alleged breach of a confidential disclosure agreement. The Sixth Circuit explained in *Allied Erecting* that, "at its core, [*Amalgamated* was] about enforcing the prior judgment and awarded relief." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 708 (6th Cir. 2015). In cases where the previous request "for prospective injunctive relief or royalties was flatly denied . . . [t]here is no prospective relief . . . to enforce . . . ." *See id.* As such, the *Amalgamated* exception only applies when the plaintiff has already received prospective relief and is seeking to enforce the earlier judgment. But where a party alleges misappropriation of different trade secrets years after discovery of the breach of confidentiality, the claim is barred by the statute of limitations regardless of whether the plaintiff brought an unsuccessful suit in the first instance. *See id.* Therefore, we affirm the determination that Dr. Maatuk's trade secret claims are barred by the statute of limitations.

B.

We now turn to Dr. Maatuk's correction of inventorship claim.

"Section 256 creates a cause of action in the district courts for correction of non-joinder of an inventor on a patent . . . ." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004) (citing 35 U.S.C. § 256). Because "[c]onception is the touchstone of inventorship," *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994), "a joint inventor must contribute to the invention's conception," *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). The joint inventor's contribution must be more than "insignificant in quality[] when that contribution is measured against the dimension of the full invention." *Fina Oil*, 123 F.3d at 1473. "Contributions to realizing an invention may not amount to a contribution to conception if they merely explain what was then state of the art." *Eli Lilly*, 376 F.3d at 1359 (internal quotation marks omitted).

Dr. Maatuk argues that he contributed a cost-effective configuration for the heater and thermocouples to measure the temperature, fluid-level, and pressure in the '105 patent. He also claims that he conceived of the idea of a multi-function sensor using a single substrate and arranging the sensor's thermocouples in parallel. As such, he claims that he is entitled to be listed as an inventor on the '105 patent. We disagree.

While Dr. Maatuk claims that he contributed multiple limitations to the '105 patent, he has not provided evidence as to how these ideas were significant to the '105 patent's conception. The sensor configuration for a heater and thermocouples used in the '105 patent was disclosed in U.S. Patent 6,546,796, a patent filed by Mr. Zimmermann and published in 2002—more than a year before Mr. Khadkikar and Mr. Zimmermann conceived of the idea for the '105 patent. The '796 patent also discloses the concept of having

multiple sensors on a single substrate. Thus, Dr. Maatuk's first two claimed contributions were disclosed in the prior art when Mr. Khadkikar and Mr. Zimmermann conceived the '105 patent.

Dr. Maatuk also presented no evidence that a parallel thermocouple configuration was new or significant. Dr. Maatuk argues that he contributed the idea of arranging thermocouples in parallel in the '105 patent because Claim 2, when read broadly, can be construed to cover a parallel configuration. The fact that the parallel configuration was not explicitly stated in the claims, however, shows that it is insignificant when compared to the dimensions of the full patent, which provides a means of creating a multi-function sensor combining a turbidity sensor with at least one other fluid sensor.

Dr. Maatuk further disputes the date that Mr. Khadkikar and Mr. Zimmermann conceived of the idea for the '105 patent. He argues that the only evidence supporting this date is Mr. Khadkikar's affidavit, which states he and Mr. Zimmermann conceived the idea on December 10, 2003. But Dr. Maatuk provides no evidence contesting this date, so he fails to create any material dispute as to the date of conception.

## III

Because Dr. Maatuk's trade secret misappropriation claims accrued when he filed his initial complaint in 2003 and the statute of limitations in Ohio is four years, his trade secret misappropriation and unjust enrichment claims are time-barred. Further, because Dr. Maatuk provided no evidence that he made a non-insignificant contribution to the conception of the '105 patent, he failed to create a genuine dispute of material fact as to inventorship. Therefore, we affirm the district court's grants of summary judgment.

**AFFIRMED**